| | |
|---|---|
| DAVID D. HARRIS, | No. 2:16-cv-0588 DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| N. KENNEDY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendants failed to provide him timely medical treatment in violation of the Eighth Amendment. Before the court is defendants' motion for summary judgment. For the reasons set forth below, the undersigned recommends the motion be granted in part and denied in part.

## BACKGROUND

### I. Allegations in the Complaint

Plaintiff alleges that on August 1, 2015 he cut his wrist during a psychotic episode. At about 10:10 p.m. that night, plaintiff informed defendant Correctional Officer Kennedy that he had cut himself and was still bleeding. Kennedy told plaintiff he would contact the sergeant on duty, defendant Carlisle. However, he did not do so. As a result, plaintiff did not receive medical assistance, was in pain, and was in "fear for [his] life." (ECF No. 1 at 1.)

1

Plaintiff states that Kennedy violated prison regulations when he failed to contact the duty sergeant. (Id. at 1-2.) Defendant Kennedy regularly checked on plaintiff after that, and told him he would keep plaintiff "updated" on his attempts to contact the sergeant. Plaintiff states that he told Kennedy he was in "extreme pain." (Id. at 7.) Plaintiff did not receive help until 7:28 a.m. on August 2, 2015. As a result of the delay, his wound could not be sutured. (Id. at 6.)

Plaintiff seeks compensatory relief and an order requiring that he be provided psychiatric help for his auditory hallucinations. (Id. at 9.)

## II. Procedural Background

Plaintiff filed his complaint on March 21, 2016. (ECF No. 1.) On screening, the court found plaintiff stated a potentially cognizable Eighth Amendment claim against defendants Kennedy and Carlisle. (ECF No. 7.) Defendants filed an answer. (ECF No. 27.)

On August 4, 2017, defendants filed a motion for summary judgment. (ECF No. 36.) Plaintiff then sought the return of his legal property so that he could prepare an opposition. (ECF No. 41.) Plaintiff explained that he had been temporarily transferred to the California Health Care Facility ("CHCF") from California State Prison-Corcoran ("CSP-Corcoran") for mental health care. He did not have access to his legal property at CHCF. In response, the court ordered defendants to explain whether it was possible for plaintiff to be provided access to his legal materials while he was at CHCF. (ECF No. 42.) Defendants informed the court that because plaintiff's transfer was temporary, his legal property would remain at CSP-Corcoran. (ECF No. 43.)

Before the court had the opportunity to address defendants' response, plaintiff filed an opposition to the motion for summary judgment. (ECF No. 45.) Seven days later, defendants filed a reply. (ECF No. 46.) Plaintiff then moved to stay this case until he could regain access to his legal materials. (ECF No. 47.) Plaintiff explained that he required those materials to address defendants' contention that he did not exhaust his administrative remedies.

In an order filed November 30, 2017, the undersigned gave plaintiff a second opportunity to file an opposition to the summary judgment motion. (ECF No. 52.) The court also denied plaintiff's request for a stay as moot because he had, by that time, been transferred to the

California Medical Facility ("CMF") where he was able to have possession of his legal documents. On December 13, plaintiff filed an amended opposition to the motion for summary judgment. (ECF No. 53.) On December 19, defendants filed a reply. (ECF No. 54.) On December 26 and 29, 2017, plaintiff filed two additional documents addressing matters raised in defendants' reply brief. (ECF Nos. 55, 56.) These sur-replies are not authorized by the local rules or the Federal Rules of Civil Procedure and will be disregarded. See E.D. Cal. R. 230(l) (when a motion is filed, the non-moving party may file an opposition and the moving party may file a reply to the opposition).

## MOTION FOR SUMMARY JUDGMENT

Defendants argue that plaintiff's allegations do not amount to a violation of the Eighth Amendment, that he fails to allege a claim against defendant Carlisle, that defendant Kennedy is entitled to qualified immunity, and that plaintiff failed to exhaust his administrative remedies. The court finds summary judgment appropriate for defendant Carlisle, and recommends denial of summary judgment for defendant Kennedy.

**I.      General Legal Standards**

**A.   Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

////

1 | When the non-moving party bears the burden of proof at trial, "the moving party need
2 | only prove that there is an absence of evidence to support the nonmoving party's case." Oracle
3 | Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).
4 | Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
5 | against a party who fails to make a showing sufficient to establish the existence of an element
6 | essential to that party's case, and on which that party will bear the burden of proof at trial. See
7 | Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
8 | nonmoving party's case necessarily renders all other facts immaterial." Id. In such a
9 | circumstance, summary judgment should be granted, "so long as whatever is before the district
10 | court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

11 | If the moving party meets its initial responsibility, the burden then shifts to the opposing
12 | party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
13 | Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
14 | existence of this factual dispute, the opposing party typically may not rely upon the allegations or
15 | denials of its pleadings but is required to tender evidence of specific facts in the form of
16 | affidavits, and/or admissible discovery material, in support of its contention that the dispute
17 | exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

18 | However, a complaint that is submitted in substantial compliance with the form prescribed
19 | in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule
20 | 56 as long as its allegations arise from personal knowledge and contain specific facts admissible
21 | into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald,
22 | 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit
23 | because the plaintiff "demonstrated his personal knowledge by citing two specific instances
24 | where correctional staff members . . . made statements from which a jury could reasonably infer a
25 | retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey
26 | v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary
27 | judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under
28 | ////

4

penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Additionally, the opposing party must show that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.    Statements of Facts**

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 36-3.) Plaintiff's filings in opposition to defendant's motion for summary judgment fail to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff's oppositions to the summary judgment motion consists of two memoranda of points and authorities and some exhibits. (ECF Nos. 45, 53.)

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendants' DSUF or has shown facts that

6

are not opposed by defendants. The court considers the statements plaintiff made in his verified complaint and of which he has personal knowledge. A complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment.").

In plaintiff's complaint, his signature follows the statement, "I declare under penalty of perjury that the foregoing is true and correct." (ECF No. 1 at 9.) It therefore qualifies as a verified complaint under 28 U.S.C. § 1746 and, to the extent it alleges specific facts from plaintiff's personal knowledge, it carries the same weight as an affidavit proffered to oppose summary judgment. See Keenan v. Hall, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (mem.). The court has also reviewed plaintiff's sworn testimony given at his deposition. (See ECF No. 40 (Defs.' Notice of Lodging Depo. Trscrpt.).)

**III. Analysis**

**A. Eighth Amendment Claim**

Defendants argue plaintiff has failed to establish that he had a serious medical need when he encountered defendant Kennedy on August 1, 2015 at 10:10 p.m. Defendants describe plaintiff's injury as minimal and contend that any delay in treatment did not cause plaintiff harm. In addition, they contend plaintiff has failed to show defendant Carlisle was involved in failing to treat plaintiff's injury.

////

### 1. Legal Standards

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

////

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

////

332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 2. Material Facts re Eighth Amendment Claim

#### a. Undisputed Facts

On August 1, 2015, plaintiff was a prisoner incarcerated at California State Prison-Sacramento ("CSP-Sac"). (DSUF #3 (ECF No. 36-3 at 2).) He had been transferred from CHCF on July 30, 2015. (DSUF #3.) At that time, plaintiff was being involuntarily medicated with antidepressants and antipsychotics to treat depression, auditory hallucinations, and suicidal ideation. (DSUF #4.) Prior to August 1, 2015, plaintiff had cut his wrists on approximately ten occasions. (DSUF #5.) On March 20, 2015, plaintiff cut his left wrist severely enough to require sutures. (DSUF #6.) However, by the time he arrived at CSP-Sac, plaintiff's wound had healed. (Trscrpt. of Plt.'s Mar. 28, 2017 Depo. ("Plt.'s Depo.") at 31-32.) Plaintiff had multiple healed scars on his left arm when he arrived at CSP-Sac. (DSUF #7.) None of those healed scars were scabbed when he arrived. (Plt.'s Depo. at 32.)

On August 1, 2015, at approximately 10:10 p.m., defendant Kennedy looked in on plaintiff in his cell as part of a regular welfare check. (DSUF #10.) Plaintiff informed Kennedy that he had a cut on his wrist. (Compl. (ECF No. 1 at 1).) When Kennedy asked plaintiff if it hurt, plaintiff responded that it did. (Plt.'s Depo. at 58.) The injury to plaintiff's wrist was in the same area where previous cuts had occurred. (DSUF #8.) Kennedy informed plaintiff that he would call the sergeant on duty and keep plaintiff updated. (DSUF #13.) Plaintiff wrapped a sock around the wound to stop the bleeding. (DSUF #14.)

About thirty minutes later, Kennedy again stopped at plaintiff's cell on a welfare check. (DSUF #15.) Plaintiff asked Kennedy what was taking so long and Kennedy responded that he would keep plaintiff "updated." (DSUF #16.) At this time, the bleeding had stopped. (DSUF #17.) Plaintiff told Kennedy that he was in extreme pain. (Compl. (ECF No. 1 at 7).) Kennedy checked on plaintiff approximately four additional times that night. (DSUF #19.) Each time, plaintiff was again told that Kennedy would keep plaintiff updated about contacting the sergeant. (DSUF #20.) Plaintiff fell asleep at approximately 3:00 a.m. on August 2, 2015. (DSUF #21.)

The following morning, plaintiff refused his medications. (DSUF #22.) When a sergeant was sent to talk with him, plaintiff told the sergeant that he had cut himself the previous night. (Plt.'s Depo. at 62.) Plaintiff was then taken to the Triage and Treatment Area ("TTA"). (DSUF #22; Plt.'s Depo. at 62.) He was examined there by a nurse. (DSUF #22.) At that time, plaintiff's wound was not bleeding. (DSUF #23.) The nurse contacted the on-call doctor who decided that because plaintiff's wound had started crusting over, sutures were not indicated. (DSUF #24; Plt.'s Depo. at 74-75.) Instead, the nurse applied steri-strips to plaintiff's wound and bandaged it. (DSUF #26.) Plaintiff was then placed on suicide watch in a mental health crisis bed. (DSUF #27.) His wrists were treated there with ointment and bandage changes. (Id.) He was not given pain medication for his injury. (DSUF Nos. 23, 24, and 26.)

The fact that steri-strips were used rather than sutures did not cause plaintiff any damage. (Plt.'s Depo. at 75.)

Plaintiff does not know whether defendant Carlisle was ever informed about his condition. (Plt.'s Depo. at 64.) Kennedy states that he never contacted defendant Carlisle that night regarding plaintiff.[1] (Aug. 4, 2017 Decl. of N. Kennedy ("Kennedy Decl.") (ECF No. 36-3 at 55), ¶ 4.)

### b. Disputed Facts re Eighth Amendment Claim

The parties dispute the extent of plaintiff's injury at the time Kennedy first encountered him on the night of August 1, 2015. Plaintiff states that he cut himself deeply and blood was "gushing" from his wound. (Plt.'s Depo. at 54.) Plaintiff testified at his deposition that he was bleeding so badly that blood got on his clothes and on parts of his cell. (Id. at 55.)

In his declaration, defendant Kennedy states that when he first encountered plaintiff on August 1, 2015, he observed an "old wound on plaintiff's left wrist which was scabbed over and not actively bleeding." (Kennedy Decl. (ECF No. 36-3 at 54-55), ¶ 2.) Kennedy observed that it

---

[1] Defendants also cite to the declaration of defendant Carlisle to show Carlisle was not made aware of plaintiff's injury that night. However, the declaration of defendant Carlisle attached to the DSUF involves a "Mr. Bullock." Carlisle makes no mention of plaintiff Harris. (See Aug. 3, 2017 Decl. of J. Carlisle (ECF No. 36-3 at 57-58).) Because it does not appear to have any relevance to this case, the court disregards Carlisle's declaration.

1 | "appeared to be a scratched-off scab." (Id.) Kennedy felt the wound did not require immediate
2 | medical attention. (Id.)

3 | The parties also dispute whether plaintiff told Kennedy that he had harmed himself. In his
4 | complaint, plaintiff states that he told Kennedy he had just cut himself. (ECF No. 1 at 1.) In his
5 | deposition, plaintiff told a somewhat different story. He testified that he cut himself while
6 | Kennedy was watching and told Kennedy he was hearing voices and was suicidal. (Plt.'s Depo.
7 | at 49-56.) In his declaration, Kennedy states that plaintiff did not tell him he had harmed himself
8 | or was suicidal. (Kennedy Decl. (ECF No. 36-3 at 55), ¶ 3.)

### 3. Is Summary Judgment Appropriate on the Eighth Amendment Claim?

Initially, the court notes that plaintiff has failed to establish any basis for relief against defendant Carlisle. There is no indication in the record that Carlisle was even aware of plaintiff's injury on August 1-2, 2015, much less that Carlisle exhibited deliberate indifference to that injury. Therefore, summary judgment is appropriate as to defendant Carlisle.

Defendant Kennedy has not, however, shown the absence of issues of material fact. While defendants make much of plaintiff's failure to show that the delay in care exacerbated his injury, they ignore the fact that deliberate indifference to plaintiff's pain is actionable under the Eighth Amendment. See McGuckin, 974 F.2d at 1059 (medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"); Williams v. Sotelo, 295 F. App'x 208, 209 (9th Cir. 2008) (prison guard's inaction which caused plaintiff to suffer further pain could be considered an injury of constitutional dimensions).

Defendant Kennedy does not state that he was unaware of plaintiff's complaints of pain. Further, the fact that plaintiff was not provided pain medication the following morning does not mean he was not in pain the previous night. Plaintiff encountered defendant Kennedy at 10:10 p.m. The facts are undisputed that he did not fall asleep until about 3:00 a.m. the following day. If plaintiff can prove he suffered significant pain during those approximately five hours as a result of Kennedy's refusal to allow plaintiff to be provided medical care, he may be able to establish a

////

serious medical need under the Eighth Amendment. This is a material question of fact that should not be resolved on a motion for summary judgment.

### B. Qualified Immunity

#### 1. Legal Standards

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos, 661 F.3d at 442 (quoting Ashcroft v. al—Kidd, 563 U.S. 731 (2011) (some internal marks omitted)). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition" Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted).

In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official

in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

### 2. Is Summary Judgment Appropriate on the Issue of Qualified Immunity?

As set out by the cases cited above, it was clearly established in 2015 that a correctional officer could be deliberately indifferent to an inmate's pain in violation of the Eighth Amendment by failing to respond appropriately to an injury. The facts are disputed about the extent of plaintiff's injury when he showed it to defendant Kennedy. It is also not clear that Kennedy knew plaintiff was in pain.

Defendant Kennedy has not met his burden of demonstrating the absence of a genuine issue of material fact with respect to the extent of plaintiff's injuries or the reasonableness of his response to plaintiff's requests for medical help. These factual issues are sufficient to defeat summary judgment on the grounds of qualified immunity. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment on qualified immunity is not appropriate).

**C. Exhaustion**

Defendants contend plaintiff failed to exhaust his administrative remedies through all three levels of review.

////

////

////

14

### 1. Legal Standards

#### a. Legal Standards under the PLRA

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with deadlines and other critical prison grievance rules is required to exhaust. Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly"). "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'— rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc). As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. Albino, 747 F.3d at 1168. Defendants bear the burden of proving that there was an available administrative remedy that the prisoner did not exhaust. Id. at 1172. If defendants meet this burden, then the burden shifts to plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. In adjudicating summary judgment on the issue of exhaustion, the court must view all the facts in the record in the light most favorable to plaintiff. Id. at 1173.

### b. California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. §3084.7(d)(3).

Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue

16

under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

### 2. Material Facts re Exhaustion

#### a. Undisputed Facts

On August 9, 2015, plaintiff submitted a CDCR form 602 Inmate-Parolee Appeal, logged as #SAC-S-15-02713, concerning the encounters with defendant Kennedy on August 1-2, 2015. (DSUF #38.) Plaintiff was interviewed concerning this appeal on September 30, 2015. (DSUF #39.) At that time, plaintiff was housed at Mule Creek State Prison. (Id.) Plaintiff's appeal was denied at the first level of review. (Plt.'s Depo. at 86.)

Plaintiff submitted an appeal to the second level of review. (DSUF #42.) The date plaintiff wrote on that appeal was October 10, 2015. (DSUF #43.) Plaintiff's appeal was cancelled because it was not timely. (DSUF #45.)

Plaintiff submitted an appeal of the cancellation to the third level of review on January 22, 2016. (See ECF No. 36-3 at 64.) Defendants provide the declaration of M. Voong, Chief of the CDCR Office of Appeals. (Aug. 1, 2017 Decl. of M. Voong (ECF No. 36-3 at 77-79), ¶ 2.) According to Voong, plaintiff's third level appeal was "rejected for repeatedly filing a cancelled appeal on or about April 18, 2016." (Id. ¶ 10.)

#### b. Disputed Facts re Exhaustion

It is not clear from the record when plaintiff received the first level response or where he was incarcerated at that time. Defendants contend the Appeal Response from the first level of review was sent to plaintiff on October 21, 2015. (DSUF #41; ECF No. 36-3 at 70.) Defendants provide a copy of that response. (See ECF No. 36-3 at 67-68.) The response is dated September 30, 2015.[2] In his deposition, plaintiff testified that he did not know where he was housed when

---

[2] The court also notes that the response incorrectly identifies the date of the events of which plaintiff complains as September 1, 2015. The parties do not dispute that the events occurred on August 1-2, 2015.

17

the first level response was mailed to him. (Plt.'s Depo. at 88.) He did recall that one of his appeals was returned to him when he was at CHCF in Stockton. (Id. at 89.) He also stated that he could not get his mail at that time. (Id.)

The parties also dispute the date plaintiff submitted his appeal to the second level of review. At his deposition, plaintiff testified that he submitted that appeal "sometime in October" 2015. (Id. at 90.) Plaintiff also points to date stamps on his appeal form. A copy of that form is attached to the DSUF. (See ECF No. 36-3 at 63-66.) The copy shows a date of November 2, 2015 as the date of receipt by, it appears, the Inmate Appeals Branch. (See id. at 63, 65.) However, defendants contend the date of plaintiff's submission was much later. Defendants provide the declaration of C. Lacy who is a custodian of records for custody appeals submitted at CSP-Sac. (Aug. 1, 2017 Decl. of C. Lacy ("Lacy Decl."), ¶ 1.) According to Lacy, plaintiff's appeal for second level review was not received until January 5, 2016. (Id. ¶ 4.)

### 3. Is Summary Judgment Appropriate on the Issue of Exhaustion?

Defendants have not shown an absence of disputed material facts regarding the issue of exhaustion. The record here is replete with questions about when plaintiff received notification that his first level appeal had been denied and when he submitted an appeal of that decision. Further, even if the dates set out by defendants are correct, it is unclear whether administrative remedies were available to plaintiff at the time he was required to submit a timely appeal. For these reasons, summary judgment should be denied on the issue of exhaustion.

## CONCLUSION

Defendants failed to show the absence of disputed material facts regarding plaintiff's claim that defendant Kennedy was deliberately indifferent to his serious medical needs, regarding the protections of qualified immunity, and regarding plaintiff's exhaustion of administrative remedies. Defendants have, however, established that plaintiff fails to show liability on the part of defendant Carlisle.

Accordingly, the Clerk of the Court IS HEREBY ORDERED to assign a district judge to this case; and

////

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 36) be granted as to defendant Carlisle and denied as to defendant Kennedy.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 9, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/harr0588.msj